DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Joseph Dominick Chilleme,      )
                               )       CASE NO. 5:05 CV 2377
              Petitioner-Defendant,    )       CASE NO. 5:04 CR 215
                               )
       v.                      )       <u>MEMORANDUM OPINION</u>
                               )
United States of America,      )
                               )
              Respondent-Plaintiff.    )
                               )

## I.  Introduction

This is a pro se action by the petitioner-defendant, Joseph Dominick Chilleme, seeking

habeas relief from his sentence to a term of imprisonment of sixty months following his guilty

pleas, pursuant to a written plea agreement, to the following three counts (Ct. 1, 3 and 4) in a

four count indictment.

Chilleme contends that he was denied the effective assistance of counsel by his retained

counsel, Gregory Scott Robey.

The three counts to which Chilleme pled guilty alleged:

### Count I

On or about and between January 24, 2004, and April 2, 2004, in the
Northern District of Ohio, Eastern Division, and elsewhere, JOSEPH D.
CHILLEME, did knowingly use facilities and means of interstate commerce, that
is, a computer connected to the Internet and a telephone, to attempt to persuade,
induce, entice and coerce an individual who had not attained the age of 18 years,
that is, a twelve (12) year old girl to engage in illegal sexual activity with him.

(5:05 CV 2377)
(5:04 CR 215)

### Count III

On or about April 2, 2004, in the Northern District of Ohio, Eastern Division, and elsewhere, JOSEPH D. CHILLEME, did knowingly travel in interstate commerce, from the State of Florida to the State of Ohio, for the purpose of engaging in illicit sexual conduct, as defined in Title 18 United States Code, Section 2423(f), with another person, that is a twelve (12) year old girl.

### Count IV

That on or about and between January 24, 2004, and March 29, 2004, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendant, JOSEPH D. CHILLEME, did knowingly use a facility and means of interstate commerce, that is, a computer connected to the Internet, to knowingly attempt to transfer obscene matter, that is, numerous visual images of an adult male penis and of himself masturbating, to an individual who had not attained the age of 16 years, that is, a twelve (12) year old girl.

### II.  The Commencement of the Action

Chilleme wrote to the Court a letter dated September 26, 2005 and received in chambers

on October 3, 2005.  Chilleme's letter stated in part as follows:

> ...
>
> in [sic] the time leading to my sentencing I was "represented" by Greg Robey.  Prior to looking into taking a plea, Mr. Robey informed me that the sentences would run consecutively, and that I was looking at somewhere around twenty plus years in prison if we go to trial.  At the same time period I was told that my father had cancer of the bladder.  With this said, and Mr. Robey stating a sentence of twenty plus yrs. I asked him to look into a plea even though I maintained my innocence.  He said a jury would be "shocked" and find me guilty no matter that I was "role playing" and felt I was dealing with two adult females. Facing what Mr. Robey stated as a certain twenty plus yrs or plead out and say I'm guilty and face 5 yrs., Your Honor I'm ashamed that I sold my soul for the lesser term and not fought.
>
> During the writing of the plea agreement, Mr. Robey stated that with my history of drug usage I would be placed if elligible [sic] into the RDAP program

2

(5:05 CV 2377)
(5:04 CR 215)

and that I would receive [sic] up to 12 months off my sentence not including good
time or halfway house of 6 months.

Your Honor, this is where my issues begin.  First upon my arrival here at FCC
Coleman low I was told by m/ [sic] case manager and councelor [sic] on two
occasions, that even though my PSI states drug use and that you had made the
recommendation I be placed into said RDAP program, I would not recieve [sic]
any time off, nor will I receive [sic] any half way house time because I'm a "sex
offender" Your Honor if this is true, than [sic] Mr. Robey being a federal trial
attorney should have known, and not made statements nor promises that could not
be met.

My second major issue Your Honor, is that I was misled into taking the
plea.  I had put m/ [sic]  trust in Mr. Robey to be accurate and honest in the facts
that he made to me.  He stated a running of consecutive terms, in my time in the
law library here at Coleman.  All the cases I had researched that were similar to
mine all recieved [sic] concurrent sentences.  Your Honor, for like charges the
longest sentence I had seen was 120 months, and this was with a more severe
doing than myself also with a 6 level inhancement [sic] for having over 300 plus
images of children in various sex poses and acts.  So the 240 months plus Mr.
Robey stated I would receive [sic] was way overstating my exposure.  I maintain
and state that I would have gone to trial if not for the statements made by Mr.
Robey concerning both my maximum exposure plus not recieving [six] any time
credits for the RDAP as well as not being illigible for halfway house.

Your Honor, the last issue I will waste your time with, is possibly the most
important issue that can show my innocence.  Your Honor on the day of 04-02-
04, the day I was picked up at Akron airport by the F.B.I. I was in contact with
the "sting" agent possing [sic] as "Lorie".  We were instant messaging eachother
[sic] between the hours of 10:00 AM up to approx. 5:00 PM or somewhere close
to those times.  In the conversation Your Honor I stated I was in great pain, due to
my back injury and that the two of them could do whatever.  "Lorie" told me to
save my energy for when I arrived I had "two women" to please (satisfy) Your
Honor her statements reflects what I believed all along, that I was dealing with
two woman, and this 100 percent conflicts with the nature of the offenses I was
charged with.

As a result of the receipt of the letter, the Court ordered the clerk to establish a civil case

number with the heading of Chilleme v. United States and to proceed under the provisions of 28

(5:05 CV 2377)
(5:04 CR 215)

U.S.C. § 2255 and assign the case to this branch of the court as the Court had presided over the

petitioner's criminal case.  (See Docket No. 2).

Chilleme then filed a supplement to his action sounding in § 2255.  (Docket Nos. 5, 6-1,

6-2 and 6-3).  The government filed a response (Docket No. 7) and Chilleme has filed a reply in

support of his habeas action (Docket No. 10).

In support of his claim, Chilleme attached his affidavit (Docket No.6-2) which states in

its entirety as follows:

> Before me, the undersigned authority, personally appeared Joseph
> Dominick Chilleme, who does hereby declare under penalty of perjury that all
> facts stated herein are true and correct pursuant to 28 U.S.C. § 1746 executed on
> this 6th day of November, 2005 deposes and says:
>
> 1) I am the plaintiff in the above captioned case, and I have personal knowledge
> of the facts stated herein.
>
> 2) On the second (2nd) day of April, 2004, I had traveled from West Palm Beach,
> Fl. to Canton/Akron, Ohio with a stop over in Atlanta, GA.
>
> 3) During my stop over in Atlanta, GA from the hours of 10:30 AM or
> thereabouts until the hours of approx. 5:00 P.M I was in contact with the person
> posing as "Lorie," the 43 year old female.
>
> In one of the conversations I had stated that I was in pain, due to a back
> injury, and that I also had a pounding headache.  I then stated something along the
> line, that I was not sure about having sex that evening, but that the two of them,
> were free to have sex together.  "Lorie," stated that I should try and rest, and save
> my energy, because I had two (2) women to please or satisfy when I arrived.  This
> is just what I had thought I was dealing in role play with two adult women
>
> 4) On or about 7:00 P.M on the second day of April, I had landed in
> Canton/Akron Regional Airport, and upon waving to the person I recognized
> from a picture as being "Lorie."  I was rushed by both F.B.I agents as well as
> county agents and taken into custody.  Upon entering a "command" room at the
> airport, my rights were read, and I requested the agent for a court appointed

4

(5:05 CV 2377)
(5:04 CR 215)

attorney.  Questioning continued and on another one or two more occasions I had asked when will I see an attorney, and when can I make my phone call.  I believe I had also inquired if I could have two asprin [sic] and some water.  My request was ignored.  Im [sic] not sure how much later, but the agent from the county placed a form in front of me, instructing me to place my initials or signature, just stating that my rights were read.  I had no reason to believe I was being tricked, so I did as told.  I maintain, that I had invoked my right to and for counsel and this request was ignored and or denied.  I also maintain in light of the situation, being in pain and having an intense headache, that I never intentionally waived any of my rights, and if such was done, it was done by trickery and misleading me.

I was later taken from this room at the airport, and transfered by car, in the company of an F.B.I agent and an agent from the county.  Upon arriving at the jail, I was then later given the chance to make my phone call, this had to be at least one to possibly two hours after my arrest.

I called my parents house, and spoke to my father.  I had told him what happened, and of my request for court appointed counsel.  He told me he would try to get an attorney for me.  On Saturday morning, the 3rd day of April, the county agent knockes [sic] on my cell door, asking if I wanted to talk.  Told him not until I speak to an attorney.  He did not reply, just walked away.

I maintain that any miscontrued statements taken out of context, from the questioning on the night of April 2nd is in no way an admission of any sort, and I stress was taken in violation of my 6th Amendment right, to have counsel present.

5) On April fifth, 2004, I was taken to court for my initial appearance.  It was at this time I had met with Mr. Weber and Mr. Papas [sic], the attorneys I had assumed my father had gotten for me.  I informed both of the statement made to me by "Lorie" on the 2nd of April.  I also informed Weber and Papas [sic] of the questioning, and that I invoked my desire for counsol [sic].  I have no idea why my statements were not acted upon, and any guess on my part would be speculative.

6) In mid April, Weber and Papas [sic], were still attorneys of record, and I was visited by Papas [sic] and he informed me that 3 out of 4 charges were dropped, but if I went to trial I could face 30 yrs.

7) Not being happy with the representation I was recieving [sic] my father John Chilleme, fired Weber and Papas [sic], and hired Greg Robey to represent me.

(5:05 CV 2377)
(5:04 CR 215)

8) Upon meeting Mr. Robey, I informed him that I believed I was dealing with two adult women, and I told him of the statement made by "Lorie" on the 2nd of April. I also informed Robey of the questioning, after I invoked my need (right) for counsel, on same day. Robey said he was going to look into the charges against me.

Several days later, he informed me via letter that I faced a four (4) count indictment. During this time up until the 15th of June, I informed Mr. Robey that I did not believe there to be a minor involved, that it was all sexual role play, and yes I traveled to Ohio for the purpose of a sexual encounter, but with two adult women, not a woman and minor. Mr. Robey arranged for me to take an role assessment, which also indicated I was not attracted to minors.

During the days leading up to the 15th of June, Robey told me I would be facing at least 20 years in prison if this went to trial, and that it did not matter if I believed I was dealing with 2 women or not, but that I would be found guilty regardless. Knowing that I was innocent of the charges against me, but having relied upon the information provided me by Mr. Robey, on the 15th day of June, 2004 I entered a plea of guilty for crimes I did not commit. One element that Robey used to make me feel better about taking the plea, was the fact that I would not have to do a full 5 yrs. but that I would get good time credits, as well as receiving 12 months off my sentence for completion of the RDAP drug program, as well as recieving [sic] an additional 6 months off, to be placed in either a half way [sic] house or home confinement. This amounted to 18 months off, but as I found out later, Robey was wrong about my recieving [sic] time off, because of my charge. Robey also was not correct in the fact I would receive 4 consecutive terms of imprisonment.

9) After entering into the plea, I informed Robey to research for an appeal, I did this because on several occasions Robey made the remark, that if he was the attorney from the start, I would not have recieved [sic] anything longer than two (2) years. During the days between June 15 and September 29th, 2004 I asked of my father and Robey about the appeal. Robey told me that nothing can be done until after my sentencing.

10) September 29th 2004, afer I was sentenced to the agreed 60 months, I asked to see Mr. Robey. I told him now that I was sentenced, I wanted the appeal to start. He told me he would look into it, but felt that a 2255 motion would be better.

My ten days being expired, now all I had was to file a 2255. I told Robey to start, but he never did . In July of 2005, I received a letter from Robey, which

6

(5:05 CV 2377)
(5:04 CR 215)

then stated that the 2255 had no merit, and that he refused to be talked into filing such.  He thus had turned a full 360 degrees from what he told me on 09-29-04.

11) This brings me to my writing a letter to Judge Dowd, and trying my best to go as a pro se litigant placing my 2255 into the inmate prison legal mailbox on October 7th 2005.

       I Joseph Dominick Chilleme, swear by my signature below, that all statements made herein are truthful.

                 Joseph Dominick Chilleme


Chilleme's father also provided an affidavit (Docket No. 6-2) which stated in its entirety

as follows:

To Whom It May Concern,

I would like it known that the three attorneys that I have hired in the last two years have misinformed, misrepresented and in entirety [sic] lied to me and my family about the case concerning my son Joseph Chilleme.

Attorney Webber and Attorney Pappas both informed me that my son Joseph would be serving a total of 30 years in prison for a crime that I personally don't believe he had the ability to commit.  When my third lawyer Attorney Roby [sic] and Roby [sic] came into the picture they told me that he would be facing 20 years in prison if he went to trial.  This too I find repulsive, that a man that had not committed the crimes sentenced to was to be sent to prison for such an exuberant amount of time.

When I contacted a friend of mine in New York (a criminal justice attorney named Carmelo Garufi), he informed me that the sentencing for my son was not fair.  The crime that my former attorneys claimed my son committed is just not plausible.  He did not touch nor have relations with the presumable child and mother.  So tell me why he was sentenced with the same time as a rapist.

Although he is now only required to serve 5 years I believe with proper representation and proper attorneys, meaning ones that were willing and able to defend him, which I don't believe any of my former attorneys were, he would not be in jail on this very day.

(5:05 CV 2377)
(5:04 CR 215)

I would like it known that Attorney's Weber, Pappas and Roby [sic] mislead my son and I in the quest to relive [sic] him of this case, and with their help we only encountered more and more roadblocks when they were supposed to be helping my son.

Thank you,

John Chilleme

State of Florida

County of Palm Beach

### III.  The Written Plea Agreement

The written plea agreement numbers 17 pages.  It was signed by Chilleme on page 17 and he initialed the first 16 pages of the agreement.  In signing the agreement the defendant declared as follows:

I have read the entire plea agreement and have discussed it with my attorney.  I have initialed each page of the agreement to signify that I have read, understood, and approved the provisions on that page.  I am entering this agreement voluntarily and of my own free will.  No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this agreement

Paragraph 10 of the plea agreement set forth, on pages 4 and 5 of the plea agreement, the elements of the three offenses to which the defendant entered pleas of guilty and is as follows:

**Count 1 18: U.S.C. § 2422(b) Coercion and Enticement**

One:   Defendant knowingly persuaded, induced, enticed, coerced, or attempted to persuade, induce, entice or coerce, any individual who has not attained the age of 18 years old, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense; and

8

(5:05 CV 2377)
(5:04 CR 215)

Two:   Defendant did so by use of the mails or any facility or means of interstate
or foreign commerce, or within the special maritime jurisdiction and territorial
jurisdiction of the United States.

**Count 3: 18: U.S.C. § 2423(b) Travel with Intent to Engage in Illicit Sexual
Conduct**

One:   Defendant knowingly traveled in interstate commerce; and

Two:   Defendant did so for the purpose of engaging in any illicit sexual conduct
with another person.

**Count 4: 18: U.S.C. § 1470: Transfer Obscene Matter to a Minor**

One:   That the defendant knowingly transferred matter using a facility or means
of interstate commerce;

Two:   That such matter transferred by the defendant was obscene:

Three:  That the defendant attempted to transfer such obscene matter to another
person who had not attained the age of 16 years

Four:   That the defendant knew that such individual had not attained the age of
16 years.

Paragraph 21 of the written plea agreement sets forth a waiver of appellate rights and  the

right to file an action under 28 U.S.C. § 2255, but with certain limitations which included the

right to claim on appeal or by a collateral attack (i.e. an action under 28 U.S.C. 2255) claims of

ineffective assistance of counsel.  Paragraph 21 states as follows:

Defendant acknowledges having been advised by counsel of Defendant's
rights, in limited circumstances, to appeal the conviction or sentence in this case,
including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the
conviction or sentence collaterally through a post-conviction proceeding,
including a proceeding under 28 U.S.C. § 2255.  The Defendant expressly waives
those rights, except as reserved below.  Defendant reserves the right to appeal: (a)
any punishment in excess of the statutory maximum; (b) any punishment to the
extent it constitutes an upward departure from the Sentencing Guideline range

9

(5:05 CV 2377)
(5:04 CR 215)

deemed most applicable by the Court.  Nothing in this paragraph shall act as a bar
to the Defendant perfecting any legal remedies Defendant may otherwise have on
appeal or collateral attack respecting claims of ineffective assistance of counsel or
prosecutorial misconduct.

The written plea agreement set forth in graphic language the conduct of the defendant, to

which he agreed by initialing the pages, and the factual basis to support the pleas of guilty to

counts 1, 3 and 4.   The factual basis follows:

FACTUAL  BASIS AND OTHER CONDUCT

Between January 24, 2004 and April 2, 2004 Defendant participated in
communication with an individual whom he thought to be an adult woman with a
twelve year-old daughter, but was in reality an undercover police officer.  Such
communication consisted of instant message conversations, e-mails, and
telephone calls.  During the course of said communications, Defendant repeatedly
expressed his desire to engage in various sexual acts with the individuals he
thought to be an adult woman and her twelve year-old daughter, including, but
not limited to sexual intercourse.

Defendant also engaged in communication directly with an undercover
officer who was posing as the twelve year-old daughter.  During the course of
said communications, Defendant attempted to persuade and induce the individual
he thought to be a twelve year-old girl to agree to engage in sexual intercourse
with him.

On several occasions, while communicating online with the undercover
police officer posing as an adult woman and her twelve year-old daughter, the
Defendant utilized a webcam, whereby the undercover officer could see live
images of Defendant transmitted across the Internet while they exchanged text
messages.

On four occasions: March 1, 2004; March 25, 2004; March 29, 2004; and
April 1, 2004, Defendant masturbated in front of the webcam, while
communicating with the individuals he thought to be an adult woman and her
twelve year-old daughter, so that undercover officer could and did see live images
of the defendant masturbating.

10

(5:05 CV 2377)
(5:04 CR 215)

On four occasions: March 1, 2004; March 25, 2004; March 29, 2004: and April 1, 2004, Defendant attempted to persuade and induce the individual he thought to be a twelve year-old girl to engage in sexual activity with her mother, whom he thought to be an adult woman.  This conduct creates the basis for count 2 of the indictment.

During the communication described in paragraphs 13-16, Defendant was in the State of Florida and the undercover officers posing as the mother and daughter were in the State of Ohio.

On April 2, 2004, Defendant traveled from the State of Florida to the State of Ohio for the purpose of engaging in sexual activity with two individuals he thought to be an adult woman and her twelve year-old daughter.

Defendant was arrested after arriving at the Akron/Canton Airport aboard Delta Flight #5284.

IV. A review of the Transcript of the Taking of the Guilty Pleas on June 15, 2004

The transcript numbers 40 pages.  The hearing began at 3:30 P.M.  and concluded at 4:40 P.M.  (See Docket No. 30)

At the beginning of the hearing, Chilleme acknowledged that he had signed the agreement on page 17.  After advising Chilleme of his constitutional rights and the elements of the three offenses to which he apparently was prepared to plead guilty, the following exchange took place:

| | |
|---|---|
| THE COURT: | Do you have any questions about any of the three counts you are charged with? |
| MR. CHILLEME: | No, Your Honor. |
| THE COURT: | Have you had the opportunity to review with Mr. Robey the nature of the crimes with which you are charged? |
| MR. CHILLEME: | Yes, Your Honor. |

11

(5:05 CV 2377)
(5:04 CR 215)

| | |
|---|---|
| THE COURT: | And are you satisfied with the advice and instruction that he's given you in connection with this matter? |
| MR. CHILLEME: | Yes, Your Honor. |

The Court then reviewed the plea agreement as it set forth the stipulated guideline

computation as set forth at pages 8, 9 and 10 of the plea agreement and which are set forth as

follows:

Stipulated Guideline Computation.  The parties agree that the following calculation, using the Guidelines Manual effective November 1, 2003, represents the correct computation of the applicable offense level in this case, prior to any adjustment for acceptance of responsibility.  The parties agree that no other Sentencing Guideline adjustments apply.  The parties further agree that the sentence must include a term of imprisonment of not less than 5 years.

**Counts 1        Guideline § 2A3.2**
| | | |
|---|---|---|
| Base offense level | 21 | § 2A3.2(a)(2) |
| Undue Influence | +2 | § 2A3.2(b)(2)(B) |
| Use of Computer | +2 | § 2A3.2(b)(3) |

**Subtotal**                             25

**Counts 3        Guideline § 2A3.2**
| | | |
|---|---|---|
| Base offense level | 21 | § 2A3.2(a)(2) |
| Undue Influence | +2 | § 2A3.2(b)(2)(B) |
| Use of Computer | +2 | § 2A3.2(b)(3) |

**Subtotal**                             25

**Counts 4        Guideline § 2G3.1**
| | | |
|---|---|---|
| Base offense level | 10 | § 2G3.1(a) |
| Distribution to minor | 5 | § 2G3.1(b)(C) |

**Subtotal**                             15

(5:05 CV 2377)
(5:04 CR 215)

| **Multiple Count Adjustment** | **Guideline § 3D1.4** | |
|---|---|---|
| Highest Group Offense Level | | 25 |
| Plus: Increase for Multiple Count Adjustment | | +2 |
| Total Offense Level before Acceptance of Responsibility | | 27 |

Specifically, the following discussion took place between the Court and Chilleme as set forth on pages 21 and 22 of the transcript:

THE COURT:    Now, paragraph 23 is very important as far as you are concerned, because there is at least a tacit understanding that as long as you continue to accept responsibility for your conduct that the government will request that I give you what's called the third point for acceptance of responsibility. The Congress recently changed the law. It used to be that I had undeterred discretion to give three levels for acceptance of responsibility if the offense level was 16 or higher. The Congress, apparently thinking that we were too lenient, said that now I can't give that third point unless the government agrees to it. So if the government disagrees with it, I only give two. Now here the government appears to be saying – well, is saying that they propose to offer that I grant three levels.

So now let's go back to the chart. And let's assume you come in at 24. And let's assume – and I realize there is no agreement on your criminal history category. It's my understanding that at least your lawyer believes your criminal history category, because he set out that assertion when he was asking me to modify the order of detention – he said that you had no criminal record. So if that bears out then you are criminal history category one.

Now let's go look at the chart. If you are a criminal history category one and we are down to 24 then the range is 51 to 63 months. Do you see that?

MR. CHILLEME:    Yes, Your Honor.

THE COURT:    Now, because of the five year minimum, that means absent any motion for a downward departure by the government,

13

(5:05 CV 2377)
(5:04 CR 215)

|                     |                                                                                                                                                      |
|---------------------|------------------------------------------------------------------------------------------------------------------------------------------------------|
|                     | which I will describe later, then as I see it I've only got three months to play around with.  I've got 60 months to 63 months.                       |
| MR. CHILLEME:       | Yes, Your Honor.                                                                                                                                      |
| THE COURT:          | Is that the way you see it?                                                                                                                           |
| MR. CHILLEME;       | Yes, Your Honor.                                                                                                                                      |
| THE COURT:          | Is that the way it's been explained to you?                                                                                                           |
| MR. CHILLEME:       | Yes, Your Honor.                                                                                                                                      |
| THE COURT:          | Now, paragraph 24 talks about substantial assistance departure.  And that's why I asked the question of the government, if they make the motion am I still bound by the five years.  My preliminary belief is I'm not.  But I have never seen this issue arise before, so I don't want to guarantee you that I've got that power even if they make the motion.  Normally, if they make the motion in other cases then I have the power to go below the mandatory minimum.  Do you understand? |
| MR. CHILLEME:       | Yes.                                                                                                                                                  |
| THE COURT:          | Now what I want to be sure you understand is – let's read paragraph 24: "The defendant has indicated a willingness to cooperate.  If the United States Attorney's Office deems such cooperation meaningful"  - I think that's what "USAO" stands for, isn't' it? |
| MR. SULLIVAN:       | Yes.                                                                                                                                                  |
| THE COURT:          | – "the USAO may at the time of sentencing move for a downward departure under Guideline Section 5K1.1.  Defendant understands, however, that the United States Attorney's Office in its discretion will determine whether and to what extent to seek such a departure, based on the actual nature and extent of the cooperation provided.  Additionally, defendant understands that no promise has |

14

(5:05 CV 2377)
(5:04 CR 215)

been made that the Court will grant the defendant such a departure."

There's really two concepts in here.  First of all, I'm sure your counsel has explained this to you, but I want to emphasize it.  I don't have the power unilaterally, or by myself, to depart downward for what's been described to me, say, by your lawyer as, quote, substantial assistance.  I don't have that power absent a motion by the government. Do you understand?

MR. CHILLEME:     Yes, Your Honor.

THE COURT:     So they've got the control over that.

MR. CHILLEME:     Yes, Your Honor.

THE COURT:     If they make the motion, then it's within my discretion, A, whether to grant it, and if so, how much.  Do you understand that?

MR. CHILLEME:     Yes, Your Honor.

THE COURT:     Do you have any questions about that?  Because that's a fairly tricky thing to understand.

MR. CHILLEME:     Mr. Robey has explained it.  I understand it.

The Court then addressed the question of whether Chilleme's guilty plea would be voluntary in the following questioning and was assured that the guilty plea was voluntary as set forth:

THE COURT:     Now, if you do plead guilty to counts one, three and four, will those pleas of guilty be voluntary on your part?

MR. CHILLEME:     Yes, Your Honor.

THE COURT:     Will they be an exercise of your own free will?

15

(5:05 CV 2377)
(5:04 CR 215)

MR. CHILLEME:      Yes, Your Honor.

THE COURT:      Has anybody forced or threatened you or required you to
plead guilty to those counts?

MR. CHILLEME:      No, Your Honor.

The Court then reviewed the "Factual Basis" phase of the written plea agreement in the

following colloquy and received Chilleme's affirmation of the accuracy of the Factual Basis:

THE COURT:      Before the Court can accept a plea of guilty, under our
system the Court has to independently of the plea of guilty
determine that there is a factual basis for the plea of guilty.
Now, that's something that happened 20, 30 years ago.  It
used to be judges would come in and take guilty pleas in
the space of about two minutes – it was like a race against
time – and never bothered with whether or not the facts
actually coincided with the crime the defendant was
pleading guilty to.  And they stopped all that.  And now
I'm required to find that there is a basis in fact for the
proposed plea of guilty aside and apart from the fact that
you tell me you are guilty.  Do you understand?

MR. CHILLEME:      Yes, Your Honor.

THE COURT:      Now, the government has gone to some length here in this
plea agreement to set forth the factual basis.  And I believe
that begins at the top of page six, paragraph 13, through
paragraph 20 at the bottom of page seven.  Now, have you
carefully read what is set forth in those paragraphs, 13
through 20?

MR. CHILLEME:      Yes, Your Honor.

THE COURT:      I don't mean to embarrass you by reading those out loud to
you.

MR. CHILLEME:      Thank you.

16

(5:05 CV 2377)
(5:04 CR 215)

|  |  |
|---|---|
| THE COURT: | And I notice that you have initialed at the bottom of page six, and also have initialed at the bottom of page seven. So from that I conclude that you have read those paragraphs. |
| MR. CHILLEME: | Yes, Your Honor. |
| THE COURT: | And the only question I'm going to ask you: Do you in any way disagree with what those paragraphs say about your conduct? |
| MR. CHILLEME: | No, Your Honor. |

Paragraph 32 of the written plea agreement indicated Chilleme's satisfaction with his

retained counsel Gregory Scott Robey. Paragraph 32 states:

> Defendant makes the following statements: I acknowledge receiving the
> assistance of counsel from attorney Gregory Scott Robey concerning this plea
> agreement. I have fully discussed with my attorney all of my Constitutional trial
> and appeal rights, the nature of the charges, the elements of the offenses
> United States would have to prove at trial, the evidence the United States would
> present at such trial, the Sentencing Guidelines, and the potential consequences of
> pleading guilty in this case. I have had sufficient time and opportunity to discuss
> all aspects of the case in detail with my attorney and have told my attorney
> everything I know about the charges, any defense that I may have to those
> charges, and all personal and financial circumstances in possible mitigation of
> sentence. My attorney has done everything I have asked my attorney to do and I
> am satisfied with the legal services and advice provided to me by my attorney and
> believe that my attorney has given me competent and effective representation.

The Court inquired further about Chilleme's satisfaction with his lawyer in the following

colloquy:

|  |  |
|---|---|
| THE COURT: | ... |
|  | And also, paragraph 32 indicates that you are satisfied with the assistance of counsel. And I assume that you read that before you signed the agreement. |
| MR. CHILLEME: | Yes, Your Honor. |

17

(5:05 CV 2377)
(5:04 CR 215)


### V.  Chilleme's Statements Reflecting Acceptance of Responsibility
### as Appearing in the Presentence Report

The written guilty plea agreement called for a three level reduction in the offense level as long as the defendant accepted responsibility for his criminal conduct.

Paragraphs 36 through 42 of the pre-sentence report,  which went unchallenged by Chilleme, stated as follows:

36. On August 2, 2004, the defendant was interviewed with his counsel present at the Trumbull County Jail, Warren, Ohio.

37. At that time he provided the following written statement:

> *"I went on the Internet and made contact with a woman and her 12 year old daughter.  Over the course of the next few months, I solicited sex from both thru e-mail and telephone contact.  I also mailed nude and explicit photos of myself to both.  In April, 2004, I traveled to Ohio to engage in sex with them.  I accept full responsibility for my crimes and offer no excuses for my conduct. I am truly sorry for my actions and sincerely regret what I have done."*

38. At that time he also verbally acknowledged his conduct in the present offense. He advised that he had been going online for approximately four years, after is [sic] wife became disabled.  He reported that he began visiting news (CNN) websites and sports sites.  He acknowledged receiving "spam" e-mails which once opened/read, would automatically link him to pornographic sites. Eventually, he began going into chatrooms, specifically singles rooms.  He estimates that he was spending between five to six hours a day online, much of this time on business matters.[1]

---

[1]The defendant's claim that he was spending much of his time online doing business is contradicted by his father, who noted a computer and/or Internet is not needed for his business.

18

(5:05 CV 2377)
(5:04 CR 215)

39. The defendant had sexual encounters, after his divorce, on separate occasions with three different adult women (ages 24-30 years), whom he had originally met in chatrooms.  None of these relationships lasted longer than a couple of months.

40. The defendant claims in the present offense this was the first time he had visited the chatroom, "mom w dau IM older M."  He acknowledged all conduct reflected in the plea agreement and is sorry for his conduct.

41. When asked to explain why he committed the offense, the defendant related it "just happened."  Although he acknowledges his conduct, he denied having a specific interest in having sexual relations with minors.

42. The defendant has accepted responsibility for the present offense, but he lacks any insight into his action.  Specifically, communicating over a three month period with a mother and her 12 year old daughter, graphically describing sexual desires and activities he wished to engage with them, masturbating on Webcam to them on three separate occasions, and traveling from Florida to Ohio to engage in sexual activity with them, is not something that "just happened."  In short, the defendant appears to be greatly minimizing his interest in engaging in incestuous sexual relations with a 12 year old female and her mother.

### VI.  A Summary of Chilleme's Claims and the Court's Analysis

An analysis of Chilleme's claims must begin with recognition of the fact that

Chilleme, in his written plea agreement, executed a qualified waiver of his right to file an appeal

and/or an action in post-conviction under 28 U.S.C. § 2255.[2]

---

[2]Paragraph 21 of the written plea agreement states in its entirety as follows:

Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. Section 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. Section 2255.  The Defendant expressly waives those rights, except as reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; (b) any punishment to the extent it constitutes an upward departure from the Sentence Guideline range deemed most applicable by the Court.  Nothing in this paragraph shall act as a bar to the

(continued...)

19

(5:05 CV 2377)
(5:04 CR 215)

The government relies upon the two-step requirements to support a valid denial of the constitutional right to the effective assistance of counsel as set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), i.e, proof of an inadequate performance and prejudice resulting from the inadequate performance.  Counsel for the government indicates that the challenged lawyer, Mr. Robey, is unwilling to provide an affidavit to contest the claims of Chilleme.  As a consequence, the Court turns to the issue of whether the affidavit of Chilleme supports both the claim of an inadequate performance and the fact of prejudice.

*Barry v. United States,* 528 F2d 1094, 1101 (7th Cir 1976) teaches that before the petitioner in a § 2255 action is entitled to an evidentiary hearing, "the petition must be accompanied by a detailed and specific affidavit that shows the petitioner has actual proof of the allegations going beyond mere unsupported assertions."

### A.    Claim One: Petitioner's  retained lawyer, Mr. Robey, refused to file a notice of appeal despite Petitioner's request for an appeal.

Chilleme reserved the right to file a direct appeal on very narrow circumstances.  The question that remains is whether Chilleme had the right to appeal his conviction and sentence even though the punishment, i.e. the sentence, did not exceed the statutory maximum and the punishment, i.e. the sentence, did not constitute an upward departure from the sentencing guideline range deemed applicable.  Clearly, neither of these events took place as Chilleme received the least sentence that could have been imposed under the mandatory minimum

---

[2](...continued)
Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

20

(5:05 CV 2377)
(5:04 CR 215)

sentence described by the statute and the sentence did not constitute an upward departure.

Nevertheless, the defendant reserved the right to file an appeal under the terms of paragraph 21

which stated "nothing in this paragraph shall act as a bar to the Defendant perfecting any legal

remedies Defendant may otherwise have on appeal on collateral attack *respecting claims of*

*ineffective assistance of counsel* or prosecutorial misconduct".

A recent decision in *United States v. Sharp*, 442 F.3d. 946 (6th Cir. 2006) enforced the

waiver of a right to appeal even though the assistant United States attorney, rather than the

district court judge, summarized the appellate-waiver provision in the plea agreement.  In this

case, the Court explained at length the waiver provision in paragraph 21 of the written plea

agreement and the defendant acknowledged that he understood the waiver.[3]

Normally, claims of ineffective assistance of counsel where a defendant has been

convicted based upon his plea of guilty will require evidence outside the record of the taking of

the guilty plea.  Were the Court to allow the defendant to file a delayed notice of appeal in this

case, the Court sees no basis upon which the defendant could prosecute, by reference to the

record in the criminal case, any evidence of the denial of the effective assistance of counsel.

Rather, such evidence would be limited to the making of a record upon collateral attack, i.e., an

action under 28 U.S.C. § 2255.

However, *Campusano v. United States*, __F.3d. __, 2006 WL 751360 (2nd Cir. 2006)

holds that a Section 2255 petitioner is entitled to an evidentiary hearing to determine whether in

---

[3]See transcript of the hearing on June 15, 2004, when the defendant entered his plea of guilty and at pages 28 through 31.

(5:05 CV 2377)
(5:04 CR 215)

fact he instructed his retained attorney to file an appeal even where the petitioner executed a

waiver of his appellate rights.[4]

In its lengthy decision in *Campusano*, the court opined that a defense counsel, after filing

a notice of appeal when so requested, still has the option of submitting a brief pursuant to the

teachings of *Anders v. California*, 386 U.S. 738 (1967).

This Court is uncertain whether the Sixth Circuit would follow the teachings of

*Campusano*, but in the interest of presenting the circuit with a complete record, the Court will

conduct an evidentiary hearing on the issue of whether the petitioner timely requested his

retained counsel to file a notice of appeal.[5]

**B.** **Claim Two: Petitioner's retained lawyer should have filed a motion to suppress statements he made on the occasion of his arrest at the Akron-Canton Airport on April 2, 2004**.

Chilleme advances no argument that he would have insisted on a trial had his statements

to the investigating and arresting officers on the day of his arrest on April 2, 2004, been

suppressed.  Consequently, applying the *Strickland v. Washington* analysis, Chilleme fails to

demonstrate any prejudice from the failure of his retained counsel to move to suppress his

---

[4]The government was unable to obtain an affidavit from the petitioner's retained counsel but contends that petitioner's retained counsel has orally indicated that the petitioner did not request that a notice of appeal be filed.

[5]Petitioner has recently filed a supplemental pleading referencing additional authorities in an effort to show a disparity between the sentence he received and sentences that other defendants may have received. (See Docket No. 11). In particular, Petitioner is bothered by defendants who were not prosecuted under Section 2422(B) although the facts would seem to warrant prosecution. The Court notes that the evidentiary hearing it will conduct will not address Petitioner's arguments in this regard as Petitioner waived the right to object to or appeal the sentence except upon the terms presented in the waiver.

(5:05 CV 2377)
(5:04 CR 215)

alleged oral statements on the date of his arrest.  Moreover, the factual basis set forth in the

written plea agreement at paragraphs 16 through 20 makes no reference to any admissions or

statements made by Chilleme at the time of his arrest on April 2, 2004.

 The claim is without merit.

 **C.** **Claim Three: Petitioner's plea of guilty was involuntary in the sense that he relied on his lawyer's incorrect assurances that he would be permitted a reduction in time for completing a drug program while incarcerated and would be released to a halfway house to complete his period of confinement**.

 In the absence of an affidavit or testimony by Chilleme's retained counsel, at this point in

the proceedings, the Court must assume that Chilleme's retained counsel did assure Chilleme

that he would be permitted a reduction in time for completing a drug program while serving the

mandatory five year sentence and would be released to a halfway house to complete his period of

confinement.  The question that remains is whether such an assurance renders the defendant's

plea of guilty involuntary.

 In view of the fact that the Court has decided to order an evidentiary hearing, it will

permit counsel to address the claims submitted by the petitioner under this section.


 **D.** **Claim Four: Petitioner claims actual innocence because he believed he was actually going to have sexual relations upon his arrival at the Akron-Canton airport with two "women" and not a minor child as alleged in the counts in the indictment.**

 At page two of what the Court construed as Petitioner's motion for Section 2255 relief

(Docket No. 1), Petitioner recounts his conversation with  the person by the name of "Lori."

Petitioner claims that he had a phone conversation with Lori  prior  his arrival at the Akron

23

(5:05 CV 2377)
(5:04 CR 215)

Canton airport in which  he indicated he was suffering back pain.  According to Petitioner,

"Lori" told him to rest up because of his pending tryst with "two women."  See also Docket No.

6, at 2. Petitioner claims this is evidence that he was engaged in role playing and that he was

really coming to have relations with two women. Petitioner contends that his lawyer, Mr. Robey,

did not follow up on that claim, but pressured him into a guilty plea with the ill-founded

contention that he would receive a sentence of at least 20 years if he insisted on going to trial.

At this point in the proceedings, and contrary to Chilleme's agreement with the Factual

Basis for his guilty pleas and contrary to his statements made to the court's Probation

Department as set forth in the pre-sentence report, Chilleme now contends he is actually

innocent because of the conversation he had with "Lori" on his way to the Akron-Canton Airport

on April 2, 2004.  Thus, he claims that his counsel was ineffective for not pursuing a defense

based on what he was told by "Lori."  The difficulty with that position is Chilleme's agreement

with the Factual Basis which discusses in detail his masturbation conduct on four earlier dates

and at a time when he believed he was communicating "with the individuals he thought to be an

adult woman and her 12 year old daughter."

Although Chilleme does not raise directly in the context of his actual innocence claim the

fact that there was no actual minor female involved in his chat room conduct with respect to his

expectations as to a sexual encounter with both the adult mother "Lori" and her young daughter,

the absence of an actual minor victim is not a defense.  See *United States v. Root*, 296 F.3d 1222

(11th Cir. 2002); *United States v. Farner*, 251 F.3d 510 (5th Cir. 2001) and *United States v.

Powell*, 1 F.Supp. 2d (N.D. Ala. 1998).

24

(5:05 CV 2377)
(5:04 CR 215)

The claim of actual innocence is without merit.

<u>VII. Conclusion</u>

The Court will conduct an evidentiary hearing on Monday, June 19, 2006, at 9:00 a.m. The Marshal is directed to return the petitioner to this district by no later than Friday, June 9, 2006, so that he may confer with either newly retained counsel or appointed counsel if the petitioner requests the Court to appoint for him for the hearing.

The Court anticipates that the government will produce petitioner's initially retained counsel, Gregory Scott Robey, as a witness on the issues of fact that remain.

The Court will publish a separate order consistent with this memorandum opinion.

IT IS SO ORDERED.

  May 3, 2006                                    */s/ David D. Dowd, Jr.*
Date                                              David D. Dowd, Jr.
                                              U.S. District Judge